ALBERT W. WHITLER, Petitioner-Appellant, *v.* MACOUPIN COUNTY *et al.*, Respondents-Appellees.

Fourth District    No. 17646

Opinion filed July 12, 1982.

William S. Hebron, of Hebron & Hebron, of Carlinville, for appellant.

Edmond H. Rees, State's Attorney, of Carlinville and Verticchio & Verticchio, of Gillespie, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

The question presented here is whether, under sections 23—20 and 23—23 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, pars. 23—20, 23—23), a candidate for office who, according to the official canvass of the election, has lost by an extremely narrow margin, can obtain a recount upon a showing that the computer used to tally the ballots for the entire election was not operating properly but without showing that he would be the likely winner upon a recount. We conclude that he cannot and affirm the judgment appealed.

The judgment appealed was a summary judgment entered by the circuit court of Macoupin County on November 9, 1981, against plaintiff, Albert W. Whitler, dismissing with prejudice the suit he brought on December 9, 1980, against defendants, Macoupin County, Philip Brown, and Raymond J. Vernetti. He sought a recount of the ballots cast for the office of circuit clerk of Macoupin County at the general election held on November 4, 1980.

The record showed the following to be undisputed: (1) plaintiff was the candidate of the Republican Party and defendant Brown the candidate of the Democratic Party for the office in issue; (2) they were the only candidates whose names were on the ballot; (3) defendant Vernetti was the county clerk of Macoupin County; (4) the county was divided into 66 voting precincts; (5) by the official canvass Brown beat Whitler by 10,951 votes to 10,920 votes; (6) the voting was conducted under an electronic voting system whereby the voter recorded a vote by marking or punching a card which was later counted by a data processing machine pursuant to article 24A of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 24A—1 *et seq.*); and (7) all of the votes for the office in question were counted by a machine rented to Macoupin County by a private supplier.

Plaintiff Whitler has made no claim of fraud and the record does not show any trace of fraud having occurred. Plaintiff's claims have been based upon an inaccurate tabulation of the vote. One claim arose from a situation whereby, after the cards from five precincts were run through the data processing machine, the officials responsible decided it was desirable to start the counting over again. Plaintiff's other claim arose from a discovery recount of the ballots cast in each of 16 precincts selected by plaintiff pursuant to his rights under section 22—9.1 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 22—9.1). The complaint alleged and defendants admitted that the recount showed that 125 more votes were cast in those precincts for the office of circuit clerk than were shown by the official canvass figures for those precincts. Although defendant Brown

received 70 of these additional votes to 55 for plaintiff, the latter maintains that because the precincts selected were strongly for Brown, the trend would indicate that if the ballots from all the precincts were recounted, the results would show plaintiff to have been the winner.

The record showed that plaintiff could not substantiate his claim that the recount of the first five precincts showed any substantial inaccuracy to have existed. A transcript of plaintiff's discovery deposition contained testimony by plaintiff that others had told him that his vote total after a second count of the first five precincts was 200 less than after the first, but plaintiff was not able to present any firsthand information that this was so. Moreover, the unrefuted testimony of defendant Vernetti contained in his deposition was that the same five precincts were not tabulated first when the new tabulation was started. Vernetti's unrefuted deposition testimony also indicated that the recount was done because of problems with the ability of the data processing machine to canvass the cumulative total of votes and that the problem had nothing to do with the ability of the machine to tabulate the vote for an individual precinct. Vernetti's testimony also indicated that from the records he had available he could only compare the first tabulation with the second for three precincts and that in those the vote did not vary by more than one in any precinct.

Plaintiff was also unable to substantiate his contention that the results of the discovery recount revealed a trend indicating he would likely be the winner if all ballots from all precincts were recounted. Defendant Brown won 13 of the 16 precincts recounted in the discovery proceedings while plaintiff won in only three. Because he gained more votes on average in the precincts he won than defendant Brown did in those he won, plaintiff contends that the returns on recount from the other 50 precincts, 33 of which plaintiff won, would overcome Brown's lead. We must categorize plaintiff's theory as pure speculation. His claim of the gains he would make in the precincts he won is based on the returns from only three precincts.

The revelation that in an election won by only 31 votes, the apparatus failed to record 125 of the votes cast in one-fourth of the precincts is, nevertheless, a matter of concern. Nothing of record indicates that the machine failed to record more votes for one candidate than the other even though, generally, in areas where Brown was receiving more of the votes, the machine failed to record more of his votes and the reverse was true in areas where plaintiff got more of the votes. Although the record did not indicate that plaintiff would more likely than not win on a recount, it did show that neither candidate received an accurate count and that there was a less than even but, nevertheless, substantial chance plaintiff would win upon a recount.

The trial court dismissed the petition because the record presented showed that from the evidence available it could not be shown that plaintiff would more likely be the winner upon a recount. In doing so the trial court correctly followed precedent. Sections 23—20 and 23—23 of the Election Code, providing for election contests of the type here, make no mention of a requirement that the party seeking a recount allege or prove that he would be the most likely winner upon a recount. A rule requiring such allegation and proof has arisen from the case law.

The latest supreme court decision requiring that a contestant be shown to be the likely winner before a recount can be ordered is *Zahray v. Emricson* (1962), 25 Ill. 2d 121, 182 N.E.2d 756, which concerned a contest of a mayoral election. The petition filed in the circuit court alleged that: (1) unqualified voters had been permitted to vote in all precincts; (2) ballots included in the official count were not endorsed as required by law; (3) ballots included in the count were not properly marked; (4) the official canvass had not been conducted according to law; and (5) the tally of the votes for each candidate, when added together, did not equal the total votes represented as tallied. The court recognized that the purpose of the proceeding was to deliver a true vote but stated that the proceeding cannot be employed to allow a party upon mere suspicion to have "the ballots opened and subjected to scrutiny to find evidence upon which to make a tangible charge." (25 Ill. 2d 121, 124, 182 N.E.2d 756, 758.) The court held the petition insufficient because it did not clearly allege a recount would change the result.

The rule of *Zahray* that the contestant must allege and prove the likelihood that the results of an election will be changed in order to obtain a recount has been established in this State and is also followed elsewhere. (*People ex rel. Nourie v. Peltier* (1914), 265 Ill. 630, 107 N.E. 200; *Conway v. Sexton* (1909), 243 Ill. 59, 90 N.E. 203; *Louden v. Thompson* (1971), 1 Ill. App. 3d 809, 275 N.E.2d 476; 29 C.J.S. *Elections* sec. 268(2), at 721 (1965).) Our affirmance is based upon this precedent.

The writer is of the opinion that a special rule, for which he can find no precedent, should be adopted to cover situations of the nature before us and permit a recount. Section 22—9.1 of the Election Code now permits a discovery opening of the ballots subjecting them to scrutiny "to find evidence upon which to make a tangible charge" in one-fourth of the precincts if the candidate requesting the discovery has received 95% of the votes of the declared winner. Under traditional methods of conducting elections, this gave the losing candidate reasonable opportunity to check for most of the types of irregularities that occurred. The system of tabulating votes under article 24A of the Election Code by the use of a data processing machine is of comparatively recent origin. When the machine

is not functioning properly, it renders inaccurate not merely the results of a precinct but that of the entire county and in a case such as this, the entire election.

In the election under scrutiny here, plaintiff Whitler received 99.7% of the vote received by defendant Brown. In one-fourth of the precincts, 1.7% of the vote was not being counted by the machine that was processing the results of the entire election. The writer concludes that under modern voting procedures, a showing of an inaccuracy of this magnitude in a machine counting all of the votes in an election this close should be sufficient to require a total recount and the court made rule should be modified accordingly. Such a modification would be consistent with the dissent of Justice Albert Scott in *Louden*.

Affirmed.

LONDRIGAN and TRAPP, JJ., concur.