RONALD C. ROBINSON *et al.*, Plaintiffs-Appellants, v. JULIUS A. JONES *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—89—0752

Opinion filed June 30, 1989.

MURRAY, P.J., and COCCIA, J., specially concurring.

David A. Epstein and Karlo M. Karacic, both of Carroll, Sain & Epstein, Ltd., and Nathaniel R. Howse, Jr., both of Chicago, for appellants.

Freddrenna Lyle, of Smith & Lyle, Larry R. Rogers, of Hayes & Power, and Channon Williams and Chester Slaughter, both of C. Slaughter & Associates, all of Chicago, for appellee John O. Steele.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiffs, Ronald C. Robinson and Leonard Barr, appeal from an order of the circuit court of Cook County dismissing their complaint for an election contest of the February 28, 1989, special election for the office of alderman of the sixth ward of Chicago and for an injunction because their complaint was not filed within the five-day statute of limitations set forth in section 21—27 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 21—27). The issues presented for review are whether this Chicago sixth ward aldermanic election contest was governed by section 21—27 of the Illinois Municipal Code (Municipal Code), or section 23—20 of the Illinois Election Code (Election Code) (Ill. Rev. Stat. 1987, ch. 46, par. 23—20) and whether the trial court properly denied plaintiffs' request for injunctive relief.

On February 28, 1989, the Chicago Board of Election Commissioners (Board) held a special election for the offices of mayor of the City of Chicago and alderman of the sixth ward. Plaintiff Ronald C. Robinson and defendants John O. Steele, Roy P. Oliver and Derotha H. Rogers appeared on the ballot as candidates for the office of alderman and Julius A. Jones ran for alderman as a write-in candidate.[1]

On March 7, 1989, the Board proclaimed the following results for the sixth ward aldermanic election:

| "Alderman | 6th Ward | Count | Percent* |
|---|---|---|---|
| Roy P. Oliver | | 1,523 | 6.55 |
| Ronald C. Robinson | | 11,641 | 50.10 |
| Derotha H. Rogers | | 2,249 | 9.68 |
| John O. Steele | | 7,824 | 33.67 |

Write-Ins
*Percentage does not include write-in votes.

| | Votes |
|---|---|
| Julius A. Jones | 88" |

---

[1]Although Oliver, Rogers and Jones were named as party defendants in the complaint, they are not parties to this appeal.

Because none of the candidates received a majority of the total votes cast in the aldermanic election, the Board scheduled a supplementary (run-off) election for April 4, 1989, for alderman between plaintiff Robinson and defendant Steele, who, respectively, had received the highest and second highest number of votes.

On March 16, 1989, plaintiffs filed the instant complaint for election contest and injunction. Plaintiffs alleged, *inter alia*, that 82 of the 88 write-in votes cast for Julius A. Jones were invalid because the election judges had failed to sequentially number the write-in ballot cards as required by the handbook prepared and issued by the Board for election judges. By reason of these alleged invalid votes, plaintiffs asked the court to declare that plaintiff Robinson had received a majority of the valid votes cast in the aldermanic election and that plaintiff Robinson had been duly elected alderman of the sixth ward and to enjoin the Board from conducting the supplementary April 4, 1989, run-off aldermanic election.

On March 17, 1989, defendant Steele filed a motion to dismiss plaintiffs' complaint on the ground that it was insufficient at law for the reason that the sequential numbering provision, relied upon by plaintiffs to contest the election, was merely an instruction to facilitate the administrative tasks of the election process and was neither a mandatory nor directory statutory requirement and that the complaint failed to allege that the failure of the election judges to sequentially number the write-in ballot cards improperly affected the results of the election or would cause a change in the election results.

The trial court, *sua sponte*, raised the issue as to whether it had jurisdiction to hear plaintiffs' complaint because the complaint had not been filed within five days of the election as required by section 21—27 of the Municipal Code. After hearing argument by counsel and reviewing the pleadings and memoranda, the trial court entered an order dismissing plaintiffs' complaint for election contest and injunction upon its findings that (1) the right to contest an election was statutory; (2) there must be strict compliance with the statutory procedure; (3) pursuant to section 21—27 of the Municipal Code a complaint to contest an aldermanic election must be filed within five days of the election; and (4) plaintiffs' complaint was untimely and the court was without jurisdiction to hear it because it was filed 16 days after the election. Plaintiffs then brought this appeal.

■■ ■ We must determine whether this election contest was governed by section 21—27 of the Municipal Code, or section 23—20 of the Election Code, as plaintiffs contend. The right to contest an election did not exist at common law and was created by statute. (*In re*

*Contest of Election for Governor* (1983), 93 Ill. 2d 463, 474, 444 N.E.2d 170.) Therefore, questions of jurisdiction and procedure are strictly governed by specific statutory provisions. (*Young v. Washington* (1984), 127 Ill. App. 3d 1094, 1097, 470 N.E.2d 14.) It is well settled that in construing statutory provisions, this court is required to determine the intent of the legislature and to give it effect. *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340, 473 N.E.2d 1313.

An election for the office of alderman in the City of Chicago is governed by article 21 of the Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 21—24). Section 21—27 of article 21 expressly sets forth procedures to contest the results of an aldermanic election. In relevant part, section 21—27 appears below:

"Any candidate whose name appears on the ballots used in any ward of the city at any election for alderman, may contest the election of the candidate who appears to be elected from such ward on the face of the returns, or may contest the right of the candidates who appear to have received the highest and second highest number of votes to places on the official ballot at any supplementary election, by filing within 5 days after such election with the Clerk of the Circuit Court of Cook County, a complaint in writing, verified by the candidate making the contest, setting forth the grounds of the contest." Ill. Rev. Stat. 1987, ch. 24, par. 21—27.

Sections 23—19 and 23—20 of the Election Code provide:

"The election of any person declared elected to any office other than Governor, Lieutenant-Governor, Secretary of State, State Comptroller, Treasurer, Attorney General, Senator or Representative, may be contested by any elector of the state, judicial division, district, county, town or precinct in and for which the person is declared elected." Ill. Rev. Stat. 1987, ch. 46, par. 23—19.

"The person desiring to contest such election shall, within thirty (30) days after the person whose election is contested is declared elected, file with the clerk of the proper court a petition, in writing, setting forth the points on which he will contest the election, which petition shall be verified by affidavit in the same manner as complaints in other civil cases may be verified." Ill. Rev. Stat. 1987, ch. 46, par. 23—20.

Plaintiffs assert that this election contest was governed by section 23—20 of the Election Code and that the trial court acted improperly when it relied upon previously set forth section 21—27 of the Munici-

pal Code in dismissing plaintiffs' complaint because it was not filed within the five days after the election. Plaintiffs further argue that there is a conflict between the aforementioned provisions of the Municipal Code and the Election Code and that section 23—20 of the Election Code must prevail because the legislature enacted it "to supersede the 5-day rule" provided in section 21—27 of the Municipal Code.

██ █ It is well settled that where several constructions may be placed upon a statute, the court should select that construction which leads to a logical result and the court should avoid a construction which the legislature could not have contemplated. (*Orbach v. Axelrod* (1981), 100 Ill. App. 3d 973, 978, 427 N.E.2d 399.) In interpreting statutes, courts are required to presume that the legislature intended its enactments to be consistent and harmonious. Thus, where statutory provisions are *in pari materia*, the court must construe them with reference to each other so that each may be construed in harmony with the other. *United Citizens v. Coalition to Let the People Decide in 1989* (1988), 125 Ill. 2d 332, 338-39, 531 N.E.2d 802.

██ As we have heretofore indicated, plaintiffs contest the results of the February 28, 1989, Chicago aldermanic election. Article 21 of the Municipal Code expressly governs elections for aldermen in the City of Chicago. Section 21—27 specifically provides for the circumstances herein, where none of the candidates for the office of alderman has received a majority of the votes cast and a supplementary election between candidates receiving the "highest and second highest number of votes" has been scheduled by the Board. This provision addresses certain specific and extraordinary circumstances which have not been provided for in the Election Code.

██ Section 23—20 of the Election Code must be read in conjunction with section 23—19. Both sections expressly authorize any elector to contest an election of "*any person declared elected.*" (Emphasis added.) (*Likens v. Baas* (1985), 133 Ill. App. 3d 42, 50, 478 N.E.2d 507; *Jordan v. Kusper* (1987), 164 Ill. App. 3d 990, 994, 518 N.E.2d 432.) Section 21—27 of the Municipal Code is expressly limited to Chicago "aldermanic candidates who wish to contest the election of the candidate who appears to be elected from such ward on the face of the returns" or the "right of the candidates who appear to have received the highest and second highest number of votes to places on the official ballot at any supplementary election." (Ill. Rev. Stat. 1987, ch. 24, par. 21—27.) In the instant case, none of the candidates in the special election received a majority of the votes cast for alderman. The election results disclosed that plaintiff Robinson and defendant

Steele, respectively, received the highest and second highest number of votes cast. None of the aldermanic candidates was "declared elected." In order for section 23—29 to apply to an election contest, a candidate must first be "declared elected." However, even if any of the aldermanic candidates had been "declared elected" in the instant matter, section 23—20 would still be inapplicable because article 21 of the Municipal Code governs Chicago aldermanic election contests.

■ Further, our construction is consistent with the purpose of the Election Code in that it provides uniformity in the election process and stability in government. (See *United Citizens v. Coalition to Let the People Decide in 1989* (1988), 125 Ill. 2d 332, 531 N.E.2d 802.) Under the circumstances, we believe the trial court properly dismissed plaintiffs' complaint for failure to file within five days of the election as required by section 21—27 of the Municipal Code.

■ As to plaintiffs' contention that the trial court erroneously denied their request to enjoin the supplemental election, we note that courts have no jurisdiction to enjoin the holding of an election except where it is necessary to prevent a waste of public funds by conducting an election under an unconstitutional election statute or an election called in violation of the constitution. (*Jordan v. Officer* (1987), 155 Ill. App. 3d 874, 877, 508 N.E.2d 1077.) Our review of the record has not led us to conclude that either of the aforementioned exceptions exist or that plaintiffs have alleged their existence. Further, plaintiffs have an adequate remedy at law, *i.e.*, an election contest as expressly provided in section 21—27 of the Municipal Code. (*Torres v. Board of Election Commissioners* (1986), 142 Ill. App. 3d 955, 957, 492 N.E.2d 539.) Therefore, we believe that plaintiffs' contention is without merit.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PRESIDING JUSTICE MURRAY, specially concurring:

I concur completely with the majority's opinion. For what it is worth, I would like to point out a defect the case discloses in our election laws that needs legislative correction. As the majority opinion indicates, the provisions of the Municipal Code relating to elections limit the right (if any) of a candidate to file a contest to a Chicago aldermanic election for a period of five days after the election. In this case in the February 28, 1989, election, Ronald Robinson, the incumbent, received 11,641 votes to 7,824 votes for John O. Steele, the

eventual successful candidate. The proclamation of the results was made on March 7, 1989, seven days after the election. Yet, the election law, as indicated by the court's opinion, permitted a judicial review of the Election Board's proclamation only if Robinson had filed his petition within five days of the election, a point not even raised by the eventual successful candidate in the first judicial proceedings of this case. The effect of the application of the law as written is to place into an election board the power to foreclose the contest of an election by merely delaying the proclamation of the result until the time has passed to contest the same. The legislation as it now stands should be amended to permit a candidate or voter to test the efficacy of a Chicago aldermanic election upon the filing of a petition to contest the same five days after the proclamation by the Board of the results rather than the election itself.

JUSTICE COCCIA, specially concurring:
I also concur completely with the majority opinion.
I also wish to join with Justice Murray and therefore concur with his specially concurring opinion regarding the need for legislative correction.
Accordingly, I file this as my specially concurring opinion.